UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL BLACKSHEAR,

                Plaintiff,

vs.                                Case No. 3:03-cv-1075-J-12TEM

BAILIFF R.R. ROSE, JR.,
etc.; et al.,

                Defendants.

_____

## ORDER

### I. Status

On December 18, 2003, Plaintiff Michael Blackshear, an inmate of the Florida penal system proceeding *pro se* and *in forma pauperis*, initiated this action by filing a civil rights complaint (Doc. #1) pursuant to 42 U.S.C. § 1983.[1]  On April 5, 2004, Plaintiff filed an Amended Complaint (Doc. #18).  In accordance with the Court's Order (Doc. #24), Plaintiff filed a Second Amended Complaint (Doc. #27) on June 1, 2004.  In the Second Amended Complaint, Plaintiff names the following individuals and entities

_____

[1] At the time of the filing of the Complaint, Plaintiff was an inmate of the Florida penal system and is now incarcerated at Florida State Prison.  However, at the time of the February 20, 2001, incident, Plaintiff was a pretrial detainee housed at the Pretrial Detention Facility.

as the Defendants:  (1) Sheriff Nathaniel Glover, in his individual and official capacities; (2) Duval County, Florida; (3) the Duval County Sheriff's Department; (4) Bailiff R.R. Rose, Jr., in his individual and official capacities; (5) Bailiff G.P. Van Looven, in his individual and official capacities; (6) Bailiff G.S. Porter, in his individual and official capacities; and, (7) the Consolidated City of Jacksonville, Florida.  Plaintiff claims that, on February 20, 2001, while a detainee at the Pretrial Detention Facility, Defendant Rose physically assaulted him while Defendants Van Looven and Porter stood by and watched without intervening.  He also claims the Defendants were deliberately indifferent to his serious medical needs.

On September 10, 2004, Defendants Duval County, Florida, and the Duval County Sheriff's Department were dismissed as Defendants in the case.  See Court's Order (Doc. #39), filed September 10, 2004, at 3, paragraph 1.  On November 4, 2005, Plaintiff's "Joint Notice of Voluntary Dismissal" (Doc. #140) was granted, and Defendants Consolidated City of Jacksonville and Nathaniel Glover were dismissed as Defendants in the case.  See Court's Order (Doc. #143), filed November 4, 2005, at 1.  Therefore, the only remaining Defendants in this case are the bailiffs:  R.R. Rose, Jr., G.P. Van Looven and G.S. Porter.  Defendants Rose, Van Looven and Porter have filed an Answer (Doc. #29).

Before the Court is Defendants Porter, Rose and Van Looven's Motion for Summary Judgment (Doc. #115). In support of the Motion for Summary Judgment, Defendants have submitted their affidavits and also rely upon exhibits submitted by Defendants Glover and the City of Jacksonville. See Defendants Sheriff Nathaniel Glover and the City of Jacksonville's Index to Exhibits (Doc. #116), attached exhibits 1-12 (hereinafter Ex.).

Plaintiff has been instructed on how to respond to a motion for summary judgment and has been given sufficient time in which to respond. See Court's Orders (Docs. #7, #118, #126, #141, #144). Plaintiff has properly responded.[2] See Plaintiff's Opposition to Defendant Glover and City of Jacksonville's Motion for Summary Judgment (hereinafter Plaintiff's Opposition) (Doc. #145); Plaintiff's Affidavit in Support of Summary Judgment Opposition Motion (Doc. #146).

## II. Summary Judgment Standard

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[2] Although Plaintiff Blackshear entitled his response as "Opposition to Defendant Glover and City of Jacksonville['s] Motion for Summary Judgment," Plaintiff has properly addressed the issues contained within Defendants Rose, Van Looven and Porter's Motion for Summary Judgment.

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

<u>In re Optical Technologies, Inc.</u>, 246 F.3d 1332, 1334 (11th Cir. 2001).

The parties' respective burdens and the Court's responsibilities are outlined as follows:

The party seeking summary judgment bears the initial burden to demonstrate to the district court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact. <u>Taylor v. Espy</u>, 816 F.Supp. 1553, 1556 (N.D. Ga. 1993) (citation omitted). In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the non-moving party. <u>Welch v. Celotex Corp.</u>, 951 F.2d 1235, 1237 (11th Cir. 1992); <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1528 (11th Cir. 1987). If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material fact. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>[,] 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

Applicable substantive law will identify those facts that are material. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. <u>Id</u>. For factual

issues to be considered genuine, they must
have a real basis in the record. <u>Matsushita</u>,
475 U.S. at 586-87, 106 S.Ct. at 1355-56.  It
is not part of the court's function, when
deciding a motion for summary judgment, to
decide issues of material fact, but rather
determine whether such issues exist to be
tried.  <u>Anderson</u>, 477 U.S. at 249, 106 S.Ct.
at 2135.   The Court must avoid weighing
conflicting evidence or making credibility
determinations.  <u>Id</u>. at 255, 106 S.Ct. at
2513-14.  Instead, "[t]he evidence of the non-
movant is to be believed, and all justifiable
inferences are to be drawn in his favor."  <u>Id</u>.
Where a reasonable fact finder may "draw more
than one inference from the facts, and that
inference creates a general issue of material
fact, then the court should refuse to grant
summary judgment."  <u>Barfield v. Brierton</u>, 883
F.2d 923, 933-34 (11th Cir. 1989) (citation
omitted).

<u>Hairston v. Gainesville Sun Pub. Co.</u>, 9 F.3d 913, 918-19 (11th Cir.

1993); <u>see</u> <u>Mulhall v. Advance Sec. Inc.</u>, 19 F.3d 586, 589-90 (11th

Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 919 (1994).

     "It is true that on a motion for summary judgment, all

reasonable inferences must be made in favor of the non-moving

party." <u>Cuesta v. School Bd. of Miami-Dade County</u>, 285 F.3d 962,

970 (11th Cir. 2002) (citation omitted).  "A court need not permit

a case to go to a jury, however, when the inferences that are drawn

from the evidence, and upon which the non-movant relies, are

'implausible.'" <u>Id</u>. (citations omitted).

          If a reasonable jury could not find in favor
          of the nonmoving party, no genuine issue of
          material fact does exist; and summary judgment
          is proper.  <u>Beal v. Paramount Pictures Corp.</u>,
          20 F.3d 454, 459 (11th Cir. 1994).   A mere
          scintilla of evidence in support of the

> nonmoving party will not suffice to overcome a
> motion for summary judgment. <u>Allen v. Tyson
> Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir.
> 1997). As Fed.R.Civ.P. 56(e) states, "When a
> motion for summary judgment is made and
> supported as provided in this rule, an adverse
> party may not rest upon the mere allegations
> or denials of the adverse party's pleading,
> but the adverse party's response, by
> affidavits or as otherwise provided in this
> rule, must set forth specific facts showing
> that there is a genuine issue for trial."

<u>Young v. City of Palm Bay, Fla.</u>, 358 F.3d 859, 860 (11th Cir. 2004).

However, "[t]he court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1561 (11th Cir. 1997) (citation omitted). "Likewise, if reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment." <u>Id</u>. (citation omitted). Finally, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." <u>Brown v. Crawford</u>, 906 F.3d 667, 670 (11th Cir. 1990) (citations omitted), <u>cert</u>. <u>denied</u>, 500 U.S. 933 (1991).

### III. Exhaustion of Administrative Remedies

Defendants contend that Plaintiff has failed to meet the threshold requirements of 42 U.S.C. § 1997(e) and consequently his claim must be barred. <u>See</u> Defendants' Motion for Summary Judgment

at 19-20.  Specifically, Defendants state that Plaintiff did not follow the jail's grievance procedure, but instead pursued administrative review through the Internal Affairs Division.  <u>Id</u>. at 19.  In response, Plaintiff states that he was instructed by a staff member at the Pretrial Detention Facility to file his complaint with the Internal Affairs Division since the incident happened at the Duval County courthouse while he was in the care and custody of the bailiffs.  <u>See</u> Plaintiff's Opposition at 15. Additionally, in Plaintiff's Second Amended Complaint, Plaintiff stated that he filed several grievances, which were not answered or returned to him.  <u>See</u> Plaintiff's Second Amended Complaint (Doc. #27), filed June 1, 2004, at M6.  Further, he noted that he was told to file his complaint with the Internal Affairs Unit.  <u>Id</u>. at 3; Plaintiff's Exhibit A, attached to the Second Amended Complaint, Internal Affairs Unit, Detective R.B. Shacklett's Summation, dated September 7, 2001.

On April 26, 1996, the President signed into law the Prison Litigation Reform Act (hereinafter PLRA), which amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997(e), to read as follows:

> (a)  Applicability  of  Administrative Remedies. No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

> such administrative remedies as are available
> are exhausted.

42 U.S.C. § 1997(e).  The PLRA requires administrative exhaustion regardless of the relief offered through the administrative procedures as long as the grievance tribunal has the authority to take some responsive action.  See Booth v. Churner, 532 U.S. 731, 741 (2001).  Thus, a district court must dismiss the suit when it finds that the plaintiff inmate has not exhausted his administrative remedies.  Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004) (citation omitted).  Further, federal courts have indicated that the penal facility, during the administrative exhaustion process, "may give a statement of its reasons that is helpful to the district court in considering the merits of the claim."  Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998) (citations omitted); Chandler, 379 F.3d at 1287 (pointing out that the purpose of administrative exhaustion is to place the facility on notice of the disputed issue and to allow the administrators an opportunity to investigate the issue, to resolve the dispute internally and thus "limit judicial intervention in the management of prisons") (citations omitted).

This Court is satisfied that Plaintiff has sufficiently exhausted since he was told by a staff member to file a complaint with the Internal Affairs Unit.  Upon the initiation of this case on December 18, 2003, Plaintiff informed this Court that he had filed a complaint with the Internal Affairs Unit, and he attached

their Summation.   See Plaintiff's Complaint (Doc. #1), filed
December 18, 2003, attached Exhibit A.

## IV. Plaintiff's Allegations and Claims

Plaintiff Blackshear alleges that the following events took
place to form the basis of his claims.  See Plaintiff's Second
Amended Complaint (Doc. #27); Plaintiff's Opposition (Doc. #145);
Plaintiff's Affidavit (Doc. #146).   On February 20, 2001, at
approximately 7:30 a.m., Plaintiff (a pretrial detainee at the
Duval County Pretrial Detention Facility) was transported to the
Duval County courthouse for a court proceeding.   Plaintiff was
shackled in full restraints, including handcuffs and leg shackles,
and was escorted to an isolated area.  At approximately 12:15 p.m.,
while waiting for the court proceeding, Plaintiff approached
Defendants Rose, Van Looven and Porter to request toilet paper for
his use in the restroom.  Defendant Rose informed Plaintiff that no
toilet paper is in the restroom because an inmate had previously
stopped up the toilet and therefore personnel stopped providing
toilet paper in the restroom.   Plaintiff again requested toilet
paper from Defendant Rose, emphasizing his need for the toilet
paper since he had been at the courthouse since 7:30 a.m.
Defendant Rose became annoyed with Plaintiff and told him he was
not special.   Defendant Rose, Van Looven and Porter were not
wearing firearms.   See Plaintiff's Opposition at 8; Plaintiff's
Affidavit at 3.  Defendant Rose then permitted several juveniles to

- 9 -

pass through the doorway since they were on their way to the courtroom.

Shortly thereafter, Defendant Rose hit Plaintiff with two forearm blows to the head.  Defendant Rose then lifted Plaintiff (with the chain that connects the handcuffs to the leg shackles) off the floor and slammed Plaintiff onto the concrete floor. During the incident, Plaintiff did not resist or threaten Defendants and did not break any rules.  Defendants Van Looven and Porter stood by, watched the incident and failed to intervene. Defendants Rose, Van Looven and Porter then left the area, leaving Plaintiff knocked out, injured and unattended on the floor.

Plaintiff, unassisted by the Defendants, pulled himself up off the floor by using a hallway bench.  He then approached Bailiff Manning, who was standing in front of a holding cell, and informed her that Defendant Rose had injured him.  Bailiff Manning called Supervisor Homan.  Plaintiff was then transported back to the Pretrial Detention Center with nine other inmates and was taken directly back to his jail cell on the sixth floor, instead of the medical clinic.  Plaintiff had to declare a medical emergency to be taken to the jail's second floor medical clinic.  Plaintiff waited over an hour in the medical holding cell and passed out from the pain.  The nurse called the Chief Health Officer (Dr. Max Solano) who examined Plaintiff and immediately filled out a trip sheet for Plaintiff to be transported to Shands Hospital Emergency Room.  At

the emergency room, Plaintiff was x-rayed.  As a result of the
incident, Plaintiff suffered a broken collar bone, three broken
ribs and a dislocated shoulder.

### V. Defendants' Version of the Incident

Defendants set forth the following facts in support of their
Motion for Summary Judgment.  <u>See</u> Defendants' Motion for Summary
Judgment (Doc. #115); Defendant Rose's Affidavit; Defendant Van
Looven's Affidavit; Defendant Porter's Affidavit.  The bailiffs
state that Plaintiff, a high risk inmate, was continuously using
loud profanity and causing a disturbance just outside the judge's
courtroom, that Plaintiff was agitated that he had to wait to see
the judge, that they told Plaintiff to be quiet since the courts
were in session, that Plaintiff ignored the instructions, that
Plaintiff made an aggressive move towards Defendant Rose's
holstered firearm, that Defendant Rose used only an amount of force
necessary to retain his firearm, protect himself and others and to
control Plaintiff, and that Defendant Rose gave several commands to
Plaintiff to calm down and to stop resisting Rose's efforts to
bring him under control.

Defendant Rose specifically described the incident, stating in
pertinent part:

> I instructed Plaintiff to sit down and be
> quiet until we could get to his concerns.
>
> Nonetheless, Plaintiff ignored my
> instructions and proceeded to walk towards me.
> Plaintiff shoved into my body and I felt his

hand on my holstered firearm.  When I felt my
firearm move in my holster, I immediately
grabbed Plaintiff.  I moved behind Plaintiff
to protect my gun side, and placed my arms
around his chest area.  Plaintiff began to
resist by twisting in a manner as to turn
towards me.  Plaintiff was also attempting to
mule kick and head butt me.  I gave Plaintiff
several commands to stop resisting, and when
Plaintiff did not comply I forcibly brought
Plaintiff down to the ground.  Plaintiff
landed on his right shoulder and side.  I
remained on my feet, still trying to control
Plaintiff's movement.  I continued to order
Plaintiff to calm down and to stop resisting.
Plaintiff finally complied, got up from the
floor, walked down to the end of the chute,
and sat down on a bench.  Plaintiff never gave
any indication that he was injured at that
time.  I left the area and continued with my
duties and responsibilities.

I was later informed that Plaintiff
complained about being injured and had been
transferred to the jail for medical attention.
I believe Plaintiff was attempting to take
control of my firearm and therefore, I only
used the force necessary to retain my firearm,
to protect myself and others, and to control
the Plaintiff.  Plaintiff was wearing
restraints with his hands in front, and could
have easily grabbed my firearm.  My use of
force was consistent with my training and the
policies and procedures of the Jacksonville
Sheriff's Office.

Defendant Rose's Affidavit at 2-3.

Defendant Van Looven described the events of February 20,

2001, (similarly to Defendant Rose), stating in pertinent part:

Inmate Blackshear ("Plaintiff") arrived
in the holding area at approximately 7:30 a.m.
with a bad attitude, and was agitated because
he had to wait to see the judge.  I had been
advised that Plaintiff had been a problem
several times in the past while in the holding

- 12 -

area as well as in the courtrooms. Plaintiff
was loud and yelling out profanities all
morning.

. . . .

At the time that Plaintiff approached us, we
were not able to immediately give him toilet
paper as we were in the process of receiving
inmates.

Nonetheless, Plaintiff made an aggressive
move towards Officer Rose and touched Rose's
firearm with his hands. Officer Rose
immediately grabbed Plaintiff's upper body
area. Plaintiff began to resist by twisting
his body in an effort to face Officer Rose.
Officer Rose gave Plaintiff several commands
to stop resisting, and when Plaintiff did not
comply Officer Rose forcibly brought Plaintiff
down to the ground. Once Plaintiff was on the
ground, Plaintiff finally complied and Officer
Rose and I picked Plaintiff up and placed him
on a nearby bench in the holding cell.
Officer Rose left the area with Officer
Porter, who was standing in the Courtroom 7
chute, and I continued on with my duties and
responsibilities in the second holding chute.

A short time later, Plaintiff approached
me complaining that he had been injured. I
immediately notified my supervisor, Kenny
Homan, and arrangements were made for
Plaintiff to be transported to the jail to
receive medical attention. Officer Rose used
a minimal amount of force in taking Plaintiff
to the ground, and I believe the amount of
force used was reasonable and necessary to
protect myself and others, and control
Plaintiff. Plaintiff's [sic] was wearing
restraints with his hands in front, and could
have easily grabbed Officer Rose's firearm.
Further, I did not observe any use [sic]
excessive or unnecessary force, or force that
did not conform to the Jacksonville Sheriff's
Office training, policies, or procedures.

Defendant Van Looven's Affidavit at 2-3.

- 13 -

Defendant Van Looven completed an Incident and/or Use of Force Report at 1:10 p.m. on February 20, 2001.  Defendant Van Looven's Affidavit, attached Incident and/or Use of Force Report.  In the report, he classified the incident as an inmate/officer encounter and described the incident as follows:

> On 2-20-01 at approximately 12:45 hrs, in the holding cell/chute to Courtroom #8 at the courthouse, Inmate Michael Blackshear became verbally argumentative with Off. Rose.  After trying multiple times to get Mr. Blackshear to cooperate, he refused and continued to become more aggressive, and disrupting the courtroom proceedings due to the noise.  Officer Rose had to physically restrain Mr. Blackshear by taking him to the ground.
>
> Mr. Blackshear then became more passive and a few moments later complained to myself & Off. Manning of shoulder pain in his right shoulder.  We then notified the supervisors in the sally-port and transportation was provided back to the PTDF [pretrial detention facility].  Inmate was transported to the jail for the nurse to check him.  Nurse DeGuzman examined the Inmate and sent him to the Hosp. for x-rays.

Id.

Defendant Porter also witnessed the incident and gave a similar account, stating in pertinent part:

> We were not able to immediately give Plaintiff toilet paper as we were in the process of receiving inmates.
>
> Plaintiff, however, stated loudly, "Fuck the judge! I'm going to see the judge now!" Plaintiff suddenly made an aggressive move towards Officer Rose, and pushed him on his right side as if he was going to go through the door and into Judge Arnold's courtroom.

- 14 -

Plaintiff was pushing against Officer Rose on
his gun side.   Officer Rose immediately
grabbed Blackshear and forcibly brought him
down to the ground.   While on the ground,
Plaintiff tried to grab Officer Rose.
Plaintiff was given several commands to stop
resisting.   Plaintiff finally complied, got up
from the floor and sat down on a bench.
Plaintiff did not give any indication that he
was injured at that time.   Officer Rose and I
left the area and continued with our duties
and responsibilities.   I could not see if
Plaintiff had actually grabbed Officer Rose's
firearm from where I was standing, but I could
see that Plaintiff was grabbing Officer Rose
in his gun area.

I was later informed that Plaintiff
complained about being injured and had been
transferred to the jail for medical attention.
I believe the amount of force used was
reasonable and necessary to protect myself and
others, and control Plaintiff.   Plaintiff's
[sic] was wearing restraints with his hands in
front, and could have easily grabbed Officer
Rose's firearm.   Further, I did not observe
any use of excessive or unnecessary force, or
force that did not conform to the Jacksonville
Sheriff's Office training, policies, or
procedures.

Defendant Porter's Affidavit at 2.

With respect to the injuries suffered by Plaintiff as a result

of the incident, the Defendants rely upon the medical records

indicating a fractured right clavicle and three fractured ribs.

See Ex. 7; Defendants' Response to Court's Order of June 21, 2005

(Doc. #125), attached Affidavit of Geraldine B. Johnson, Registered

Nurse.

- 15 -

## VI. The Applicable Law

In any 42 U.S.C. § 1983 cause of action, the initial inquiry must focus on whether the two essential elements to a section 1983 action are present.

> A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992); Hale v. Tallapoosa County, 50 F.3d 1579 (11th Cir. 1995).

In this case, at the time of the incident, Plaintiff was a pretrial detainee housed at the Duval County Pretrial Detention Facility.  The Eleventh Circuit has recently set forth the standard to be applied when reviewing an excessive use of force claim brought by a pretrial detainee.

> Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).  But it makes no difference whether [Plaintiff] was a pretrial detainee or a convicted prisoner because "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees." Id.
>
> We thus apply the excessive force standard first enunciated in Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), adopted by this Circuit in Williams v. Kelley, 624 F.2d

695, 697-98 (5th Cir. 1980), and applied in
this Circuit thereafter in the Eighth
Amendment context. <u>See</u> <u>e.g.</u>, <u>Campbell v.
Sikes</u>, 169 F.3d 1353, 1374-77 (11th Cir.
1999). Under this standard, "whether or not a
prison guard's application of force is
actionable turns on whether that force was
applied in a good faith effort to maintain or
restore discipline or maliciously or
sadistically for the very purpose of causing
harm." <u>Brown v. Smith</u>, 813 F.2d 1187, 1188
(11th Cir. 1987) (internal quotation marks
omitted); <u>see also</u> <u>Campbell</u>, 169 F.3d at 1374.

<u>Bozeman v. Orum</u>, 422 F.3d 1265, 1271 (11th Cir. 2005) (footnote

omitted).

> To prevail on a substantive due process
> excessive force claim by a pretrial detainee,
> the plaintiff must prove that defendants'
> actions "shock the conscience" and mere
> negligence is not enough. <u>Lumley v. City of
> Dade City, Fla.</u>, 327 F.3d 1186, 1196 (11th
> Cir. 2003). The factors to be considered in
> assessing such a claim include: (1) the need
> for force; (2) the relationship between the
> need for force and the amount of force used;
> (3) the extent of the injury inflicted; and
> (4) whether force was applied by the defendant
> in a good faith effort to restore or maintain
> discipline or rather maliciously and
> sadistically with the very purpose of causing
> harm. <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1271
> (11th Cir. 2003).

<u>Redd v. Conway</u>, No. 05-12337, 2005 WL 3528932, at *2 (11th Cir.

Dec. 22, 2005); <u>see</u> <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1300 (11th

Cir. 2002) (citations omitted) (stating that "a variety of factors

are considered including: 'the need for the application of force,

the relationship between that need and the amount of force used,

the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response'").

Further, with respect to Plaintiff Blackshear's claim that Defendants Rose, Van Looven and Porter were deliberately indifferent to his serious medical needs when they left him injured and unattended on the concrete floor, the Eleventh Circuit has stated that the claim should be analyzed under the deliberate indifference standard explained in Eighth Amendment case law. Bozeman, 422 F.3d at 1272 n.13 (citing Marsh v. Butler County, Ala., 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) (en banc)).

> To prevail on this claim, Plaintiff "must satisfy both an objective and a subjective inquiry. First, the plaintiff must prove an objectively serious medical need. Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (internal quotation marks omitted) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Id. at 1272.

When describing a serious medical need, the Eleventh Circuit stated:

> In our circuit, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"

- 18 -

> Taylor, 221 F.3d at 1258 (alteration in
> original) (quoting Farmer, 511 U.S. at 834,
> 114 S.Ct. 1970). Our precedent recognizes a
> range of medical needs that are sufficiently
> serious to constitute "serious medical needs"
> for purposes of the Eighth Amendment and some
> medical needs that are not.

Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (footnote

omitted).

The Eleventh Circuit, when addressing a claim of deliberate

indifference to a serious medical need, has succinctly captured the

state of the law with respect to what actually constitutes

deliberate indifference:

> In Estelle, the Supreme Court established
> that "deliberate indifference" entails more
> than mere negligence. Estelle, 429 U.S. at
> 106, 97 S.Ct. 285; Farmer, 511 U.S. at 835,
> 114 S.Ct. 1970. The Supreme Court clarified
> the "deliberate indifference" standard in
> Farmer by holding that a prison official
> cannot be found deliberately indifferent under
> the Eighth Amendment "unless the official
> knows of and disregards an excessive risk to
> inmate health or safety; the official must
> both be aware of facts from which the
> inference could be drawn that a substantial
> risk of serious harm exists, and he must also
> draw the inference." Farmer, 511 U.S. at 837,
> 114 S.Ct. 1970 (emphasis added). In
> interpreting Farmer and Estelle, this Court
> explained in McElligott that "deliberate
> indifference has three components: (1)
> subjective knowledge of a risk of serious
> harm; (2) disregard of that risk; (3) by
> conduct that is more than mere negligence."
> McElligott, 182 F.3d at 1255; Taylor, 221 F.3d
> at 1258 (stating that defendant must have
> subjective awareness of an "objectively
> serious need" and that his response must
> constitute "an objectively insufficient
> response to that need").

This Court has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." For instance, we have stated that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997). Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott, 182 F.3d at 1255. For example, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference. Hill, 40 F.3d at 1190 n.26; H. C. by Hewett v. Jarrad, 786 F.2d 1080, 1086 (11th Cir. 1986) (citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)).

Id. at 1245-46; see Bozeman, 422 F.3d at 1272.

Plaintiff also claims that Defendants Van Looven and Porter stood by, watched the assaultive behavior of Defendant Rose upon him and failed to intervene to stop the attack. The Eleventh Circuit has stated:

Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance. See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1560 (11th Cir. 1993), as amended, 14 F.3d 583 (11th Cir. 1994) ("A police officer has a duty to intervene when another officer uses excessive force."); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) ("if a police officer, whether supervisory or not, fails or refuses

- 20 -

to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983"); <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1442 (11th Cir. 1985) ("an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance"); <u>Harris v. Chanclor</u>, 537 F.2d 203, 206 (5th Cir. 1976) ("a supervisory officer is liable under [Section] 1983 if he refuses to intervene where his subordinates are beating an inmate in his presence").

<u>Skrtich</u>, 280 F.3d at 1301 (footnote omitted).

## VII. Conclusion

Since there remain genuine issues of material fact with respect to Plaintiff's claims (as evidenced by the conflicting versions of the facts as set forth by Plaintiff and the Defendants) and because this Court cannot weigh conflicting evidence or make credibility determinations, Defendants' Motion for Summary Judgment (Doc. #115) must be denied. The parties will be granted an opportunity to notify the Court with respect to whether there is a possibility of settlement and whether a settlement conference would be helpful to the parties in reaching a settlement in this case.

- 21 -

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   Defendants' Motion for Summary Judgment (Doc. #115) is

**DENIED**.

2.   The parties, within **THIRTY (30) DAYS** from the date of
this Order, shall notify the Court with respect to whether there is
a possibility of settlement in this case and whether a settlement
conference would be helpful to the parties in reaching a
settlement.  If the parties cannot reach a settlement in this case,
this case will be set for a jury trial, as the Court's calendar
permits.

**DONE AND ORDERED** at Jacksonville, Florida this 25th    day of
January, 2006.

Howell W. Melton
HOWELL W. MELTON
United States District Judge

sc 1/12
c:
Michael Blackshear
Counsel of Record

- 22 -